OPINION
GARTH, Circuit Judge:
In 1973 Appellant Robert Lee DeFoy (“DeFoy”) was sentenced to 10-20 years in prison for armed robbery and larceny. DeFoy was paroled on April 27, 1983, but was rearrested for parole violation. He was again reparoled on September 17, 1985.
On October 29, 1991, DeFoy was arrested for involuntary deviate sexual intercourse, statutory rape, and corruption of minors (the “sex offenses”).
DeFoy was convicted of the latter crime on July 16,1992, and sentenced to 6’/¿ to 13 years in prison.
The parole board revoked parole on the armed robbery/larceny sentence and ordered DeFoy to serve 40 months back-time [1] and participate in sex offender treatment. DeFoy moved for a new trial in his sex offense case. In the meantime, he did not participate in sex offender treatment because he had testified at trial in his own defense, and the treatment program required admission of guilt.[2]
On March 27, 1997, DeFoy was granted a new trial in the sex offense case. In August 1997, DeFoy was up for reparole on the armed robbery/larceny conviction. The Department of Corrections (“DOC”) recommended reparole for DeFoy in 1997, but its staff did not agree. Appx. 45-46, 53, 370.
On June 19,1997, Hearing Officer Deborah Cook (“Cook”) conducted DeFoy’s armed robbery/larceny reparole interview. She recommended a continuance so she could check the status of DeFoy’s sex offense proceedings. Cook discovered that the District Attorney had appealed De-Foy’s grant of a new trial, and that De-Foy’s convictions “stand[ ] until ... resolved.” Thus Cook would not recommend reparóle. Appx. 166-67.
Reparole was officially denied on August 14, 1997. The reasons given included De-Foy’s assaultive initial offense, his removal for cause from a halfway house, his failure to participate in sex offender treatment, and prison misconduct. Appx. 46, 50, 119— 20, 285-86. DeFoy’s armed robbery/larceny term ended on August 7, 2000.
On September 3, 1997, the Superior Court of Pennsylvania reversed DeFoy’s grant of a new trial, and on May 15, 1998, the Supreme Court of Pennsylvania denied DeFoy’s Petition for Allowance of Appeal.[3]
*179 On April 12, 2000, DeFoy filed a pro se petition for habeas corpus under 28 U.S.C. § 2254, alleging that errors by the parole board had resulted in him serving in excess of the maximum time imposed for his armed robbery/lareeny conviction. After counsel was appointed, he amended his petition to argue violation of the Ex Post Facto and Self-Incrimination Clauses.
The Magistrate Judge’s Report and Recommendation (“R & R”) recommended the petition be denied for failure to exhaust because DeFoy likely could have filed a petition for a writ of mandamus in Pennsylvania state court. The Magistrate Judge recommended that the District Court dismiss the petition because “any ambiguity concerning the availability of a state remedy should result in a habeas petition claim being dismissed as unexhausted.” Appx. 1049.
The District Court adopted the R & R, but we entered a certificate of appealability on the question of “[wjhether constitutional claims concerning the denial of parole in Pennsylvania, other than those premised upon the ex post facto Clause, must be presented to the state courts in order to satisfy the exhaustion requirement.” Appx. 1050.
We reversed, holding that DeFoy was not required to seek a writ of mandamus in state court prior to seeking federal habeas review in order to exhaust his administrative remedies. DeFoy v. McCullough, 393 F.3d 439, 445 (3d Cir.2005). We remanded for proceedings on the merits. Two years later, after discovery, DeFoy filed for summary judgment, claiming his right against self-incrimination was violated when he was denied armed robbery/larceny reparole for refusing to admit guilt in sex offender treatment.
The Magistrate Judge’s R & R found that the statute of limitations had run on the 1997 denial of reparole, that the case was moot, and that the Fifth Amendment claim failed on the merits. The District Court adopted the R & R on September 28, 2007, 2007 WL 2903922. DeFoy timely appealed. We granted a certificate of appealability limited to whether DeFoy’s Fifth Amendment right against self-incrimination was violated when the parole board denied him reparole in 1997, purportedly on the basis of his refusal to participate in sex offender treatment. This appeal therefore deals only with the 1997 refusal of reparole.
I.
DeFoy contends that the sole reason he was denied reparole was his refusal of sex offender treatment. The record shows that refusal of treatment was one of four factors considered in DeFoy’s denial of reparóle and that it was the rare case that parole was granted without treatment. We have jurisdiction under 28 U.S.C. § 1291.[4]
A.
Defendants contend that DeFoy’s claim is barred by the statute of limitations. DeFoy argues that the Defendants waived the defense by failing to raise it much earlier in the proceedings. Our review is plenary. Johnson v. Hendricks, 314 F.3d 159, 161 (3d Cir.2002)(plenary review over dismissal of habeas petition as time-barred).
*180 The Anti-Terrorism and Effective Death Penalty Act (“AEDPA”) establishes a one-year statute of limitations for habeas corpus actions. 28 U.S.C. § 2244(d)(1). A number of Courts of Appeal hold that the statute of limitations in section 2244(d)(1) applies to habeas petitions challenging a denial of parole. McAleese v. Brennan, 488 F.3d 206, 213 n. 9 (3d Cir.2007) (citing to cases from the Second, Fourth, Fifth, Seventh, and Ninth Circuit Courts of Appeal). Much like in McAleese, DeFoy does not argue this statute of limitations does not apply. Thus, we hold that since De-Foy is challenging an August 14, 1997 denial of reparóle, he had until August 14,1998 to file his petition. His petition was filed on April 12, 2000, and was therefore untimely. The only issue remaining is whether the Defendants waived the limitations defense.
Statutes of limitations, including AED-PA’s, are not jurisdictional, and are thus waivable. United States v. Bendolph, 409 F.3d 155, 164 (3d Cir.2005). “Affirmative defenses must be raised as early as practicable, not only to avoid prejudice, but also to promote judicial economy”; failure to raise the statute of limitations in the answer will not necessarily result in waiver if the defense is raised “at the earliest practicable moment thereafter.” Robinson v. Johnson, 313 F.3d 128, 137 (3d Cir.2002). DeFoy argues that the statute of limitations was waived because Defendants never raised it in their response to the amended petition, Appx. 932-54, and indeed, did not raise it until years later. The Defendants did not raise the defense of statute of limitations “at the earliest practicable moment” after their answer.
The Defendants waited more than five- and-a-half years after the initial petition was filed, and two years after the case was remanded for extensive discovery. See Venters v. City of Delphi, 123 F.3d 956 (7th Cir.1997); Hayden v. Ford Motor Co., 497 F.2d 1292 (6th Cir.1974).[5] This case was initially filed well over eight years ago, and as noted, was before this Court in 2005. We hold the Defendants waived the defense of statute of limitations.
II.
In reviewing the denial of a habeas petition, we review the District Court’s legal conclusions de novo and its factual conclusions for clear error. Alston v. Redman, 34 F.3d 1237, 1242 (3d Cir.1994). The Fifth Amendment’s Self-Incrimination Clause provides no person “shall be compelled in any criminal case to be a witness against himself.” U.S. Const, amend. V. The Fifth Amendment protects against compulsion in a criminal case and “privileges [a defendant] not to answer official questions put to him in any other proceeding ... where the answers might incriminate him in future criminal proceedings.” Lefkowitz v. Turley, 414 U.S. 70, 77, 94 S.Ct. 316, 38 L.Ed.2d 274 (1973).
DeFoy argues that the refusal of reparole for failure to admit his guilt constituted compulsion because a new trial was pending. He contends that denial of reparole “is the equivalent of increased incarceration.” Appellant’s Br. 38. De-Foy claims that if the parole board had not considered his invocation of the Fifth *181 Amendment, his reparole would have been granted.
Defendants respond that refusal to participate in the voluntary sex offender treatment program carried no penalties because DeFoy’s sentence was not lengthened, the incidents of his imprisonment were unchanged, and he remained eligible for, and was considered for, reparole. Further, no incriminating statements were ever used against DeFoy.
This case is analogous to McKune v. Lile, 586 U.S. 24, 122 S.Ct. 2017, 158 L.Ed.2d 47 (2002). In that case, McKune, a rapist, had argued at trial that the intercourse had been consensual and he later refused to participate in sex offender treatment because he would be required to admit to the rape, which could subject him to a possible perjury charge. Id. at 32, 122 S.Ct. 2017 (Kennedy, J., plurality opinion). McKune’s refusal to participate in the sex offender program resulted in a loss of prison privileges, and he claimed that his Fifth Amendment right against self-incrimination was violated.
The Supreme Court held that McKune’s reduction in prison privileges resulting from his refusal of treatment did not rise to the level of compulsion. Id. at 36 (Kennedy, J., plurality opinion), 51, 122 S.Ct. 2017 (O’Connor, J., concurring).[6]
Similarly, here, DeFoy maintained his innocence at trial, and an admission to the sex offenses during treatment, he argues, would have been used against him at his then-pending new trial. The alleged compulsion was the refusal of early release as a result of the denial of reparole.
DeFoy has no right to parole, Commonwealth v. Brittingham, 442 Pa. 241, 275 A.2d 83, 85 (1971), and his sentence was not extended, nor was he subjected to extra punishment. See Ainsworth v. Stanley, 317 F.3d 1 (1st Cir.2002). Contra United States v. Antelope, 395 F.3d 1128, 1138 (9th Cir.2005). He merely had to serve the rest of his sentence, imposed through a fair criminal process. McKune, 536 U.S. at 53, 122 S.Ct. 2017 (O’Connor, J., concurring).[7] Just like McKune, De-Foy was not condemned to the serious punishments found in the Supreme Court’s penalty cases[8] or in cases that presented *182 graver choices found not to be violative. See, e.g., Baxter v. Palmigiano, 425 U.S. 308, 96 S.Ct. 1551, 47 L.Ed.2d 810 (1976); Ohio Adult Parole Auth. v. Woodard, 523 U.S. 272, 118 S.Ct. 1244, 140 L.Ed.2d 387 (1998); Minnesota v. Murphy, 465 U.S. 420, 104 S.Ct. 1136, 79 L.Ed.2d 409 (1984).
DeFoy, like McKune, chose not to participate in a valid treatment program in order to avoid potential self-incrimination, and he suffered because of his choice. The McKune Court noted that the Constitution does not necessarily forbid requiring an inmate to make such a choice, McKune, 536 U.S. at 41 (Kennedy, J., plurality opinion), 53, 122 S.Ct. 2017 (O’Connor, J., concurring), and that the choice made by McKune did not amount to compulsion. This case is no different. DeFoy was not denied reparole because he invoked the Fifth Amendment, but rather, primarily because he chose not to participate in treatment.[9] The consequences of this choice, as we now hold, were not serious enough to rise to the level of compulsion.
Moreover, while a new trial for DeFoy was pending during the 1997 reparole hearings, the new trial never came to fruition, as it was reversed on appeal shortly after the denial of reparole. Not only did DeFoy never actually testify in a future proceeding, the mere opportunity for the use of incriminating statements was eliminated, and thus he was no longer even exposed to the risk of future self-incrimination.
We therefore hold that the denial of DeFoy’s reparole was not serious enough to constitute Fifth Amendment compulsion and that DeFoy’s Fifth Amendment rights were not violated because he was not compelled to testify against himself.
Although we hold contrary to the District Court that the statute of limitations defense was waived by the Defendants, and the appeal was not moot, for the reasons stated above, we will affirm the District Court’s order that DeFoy’s Fifth Amendment claim fails on the merits.

. " ‘Backtime' is that part of an existing judicially imposed sentence which the Board directs a parolee to complete after a determination in a civil administrative hearing that the parolee violated the terms and conditions of parole. The parolee must serve this backtime in prison before the parolee may again be considered for reparóle, Id., and before he begins to serve the new sentence.” Brown v. Pa. Bd. of Prob. & Parole, 668 A.2d 218, 220 (Pa.Commw.Ct.1995) (citation omitted).

. The program is a voluntary group therapy system, but prisoners must admit to the official version of their offense to participate. Appx. 430-32, 872.

. On July 29, 1998, the parole board again denied DeFoy reparole, stating that at the next hearing, it would consider whether De-Foy had successfully completed sex offender treatment. Appx. 759. On October 26, 2000, reparole was denied again and DeFoy was *179 ordered to serve the remainder of his sentence for armed robbery and larceny.

. Appellees are John McCullough, former Superintendent of the Pennsylvania State Correctional Institution at Houtzdale, the Attorney General of Pennsylvania, and the Pennsylvania Board of Probation and Parole (collectively "Defendants”).

. Further, Defendants reliance on Day v. McDonough, 547 U.S. 198, 209-10, 126 S.Ct. 1675, 164 L.Ed.2d 376 (2006) is misplaced. That case stands for the proposition that courts may consider timeliness of habeas petitions sua sponte as long as the petitioner is not significantly prejudiced by the delay and the interests of justice would be served. Id. Day does not give the same leeway to litigants, and the waiver considerations explained above still apply.

. McKune is a plurality decision; while five Justices did not agree on the test to be used, five Justices did agree that McKune’s Fifth Amendment rights were not violated.

. We do not suggest that a convicted prisoner could be threatened with denial of parole on the offense of conviction in order to compel incriminating statements with respect to any unrelated matter. It is clear from both the plurality and governing concurrence in McKune that the government must have some legitimate interest besides eliciting incriminating statements, such as rehabilitating sex offenders, in order to force such a choice on an individual. See 536 U.S. at 53, 122 S.Ct. 2017 (O’Connor, J., concurring) (disavowing ”stark[] ... government attempts to compel testimony”); see also id. at 37-38, 122 S.Ct. 2017 (Kennedy, J., plurality opinion) ("A prison clinical rehabilitation program, which is acknowledged to bear a rational relation to a legitimate penological objective, does not violate the privilege against self-incrimination....”); Ainsworth, 317 F.3d at 5 (holding that the denial of parole to convicted sex offenders based on their refusal to participate in therapy was justified by government's legitimate interest in treating sex offenders).
However, given that DeFoy had in fact been convicted of a sex offense at trial, and had obtained only the minimal relief of an order for new trial that was reversed on appeal only a month after his August 1997 parole denial, we cannot completely disregard the fact that the parole board was clearly motivated by a rational interest in rehabilitation.

. The "penalty cases” found certain penalties capable of coercing incriminating testimony. Uniformed Sanitation Men Ass’n, Inc. v. Comm’r of Sanitation, 392 U.S. 280, 88 S.Ct. 1917, 20 L.Ed.2d 1089 (1968)(termination of employment); Spevack v. Klein, 385 U.S. 511, 87 S.Ct. 625, 17 L.Ed.2d 574 (1967)(loss of *182 professional license); Lefkowitz v. Turley, 414 U.S. 70, 94 S.Ct. 316, 38 L.Ed.2d 274 (1973)(ineligibility to receive government contracts); Lefkowitz v. Cunningham, 431 U.S. 801, 97 S.Ct. 2132, 53 L.Ed.2d 1 (1977)(loss of right to participate in political associations and hold public office).

. In McKune, the defendant was denied his privileges as a direct result of his choice; here, DeFoy was at least considered for reparóle.